UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TBM N160TM, LLC, a California limited liability company; and BLACKHORSE CLOVIS, LLC, a California limited liability company, | Case No.  1:24-cv-00963-HBK |
| | ORDER MOOTING DEFENDANT'S MOTION IN LIMINE |
| Plaintiffs, | (Doc. 26) |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1] |
| SIGNATURE FLIGHT SUPPORT LLC, a Delaware limited liability company, | (Doc.  41) |
| Defendant. | |

Before the Court are Defendant Signature Flight Support LLC's Motion in Limine to exclude the testimony of Plaintiffs' expert and Defendant's Motion for Summary Judgment. (Docs. 26, 41).  Plaintiffs Blackhorse Clovis, LLC and TMB N160TM, LLC opposed both motions, and Defendant filed a reply.  (Docs. 33, 36, 43, and 52).  The Court heard oral argument on April 3, 2026.  (Doc. 58).  For the reasons set forth below, the Court grants Defendant's Motion for Summary Judgment and denies Defendant's Motion in Limine as moot.

////

---

[1] Both parties have consented to the jurisdiction of a magistrate judge in accordance with 28 U.S.C. §636(c)(1).  (Doc. 17).

## I.    BACKGROUND

### A.  Procedural History

Plaintiffs proceed on their Second Amended Complaint ("SAC"), filed August 23, 2024, asserting two breach of contract claims (Counts 1, 2), two breach of implied covenant claims (Counts 3, 4), and one unfair business practices claim (Bus. & Prof. Code § 17200 et seq.) (Count 5), relating to common area maintenance ("CAM") charges under space permits for aircraft storage at Fresno Yosemite International Airport ("FAT").  (Doc. 9).

### B.  Record and Parties' Contentions

In support of its Motion for Summary Judgment, Defendant submitted a memorandum of points and authorities, a Separate Statement of Undisputed Facts, a Joint Statement of Undisputed Facts; declarations from counsel and Defendant's Vice President Michael French's Declaration, and exhibits including the Space Permits, notices of expiration, Plaintiffs' expert materials, deposition excerpts, and CAM related documentation.  (Docs. 41-1 through 41-7).

Defendant argues that summary judgment is appropriate because Plaintiffs have failed to provide evidence that they were overcharged for CAM charges and therefore cannot establish damages, an essential element of each claim.  (Doc. 41-1 at 12-19).  Defendant further contends that the Space Permits did not require annual reconciliation statements and that Plaintiffs did not plead a viable claim based on any alleged failure to reconcile. (*Id*. at 19–21).

Plaintiffs respond that disputed issues of material fact remain because Defendant allegedly included prohibited expenses within its CAM charges, which Plaintiffs contend necessarily resulted in overcharges under the terms of the Space Permits. (Doc. 43 at 4–6).  Plaintiffs also argue that the annual-adjustment language in the Space Permits required Defendant to provide annual reconciliation statements. (*Id*. at 7).

Defendant replies that Plaintiffs still have not provided any calculation showing that the CAM charges actually paid exceeded the amount properly chargeable under Plaintiffs' own interpretation of the contracts. (Doc. 52 at 2–10).

### C.  Undisputed Facts

The Court has carefully reviewed and considered all arguments, points and authorities,

declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. The omission of any argument, document, or objection from this Order should not be construed to mean that the Court did not consider it. Rather, the Court has considered all evidence it deems admissible, material, and appropriate for purposes of resolving Defendant's Motion for Summary Judgment. The following facts are material and undisputed, unless otherwise noted.

- Signature maintains a Fixed Base Operation ("FBO") at FAT which caters to the needs of business and private aviation customers. One of the principal services that Signature's FBO at FAT provides is long-term aircraft parking. (Doc. 41-3 at 2, ¶ 1).
- Areas of Signature's FBO at FAT available for rent to tenants include the Main Hangar, "T-Hangars." "Tie Downs," aircraft parking areas referred to as the Main Ramp and the East Ramp, and some office space. (*Id.* ¶ 3).
- Plaintiff TBM leased aircraft parking in the T-Hangars and later the Main Hangar, and Plaintiff Blackhorse leased aircraft parking space in the Main Hangar. (*Id.* at 3, ¶ 7).
- On January 10, 2020, Signature and Blackhorse entered into a Space Permit, for the lease of 2,420 square feet of space in the Main Hangar with a term of January 1, 2020, to December 31, 2022 (the "2020 Blackhorse Space Permit"). (*Id.* ¶ 8).
- The first page of the 2020 Blackhorse Space Permit provided for "Base Rent" of $1,156 and an "Additional Monthly 'CAM Charge' 4%" of $46 per month. (*Id.* ¶ 9).
- Section 4(b) of the 2020 Blackhorse Space Permit provided for a 3% annual increase in Plaintiffs' Base Rent during the term of the agreement. (*Id.* ¶ 10).
- Signature provided a Space Permit to Blackhorse with an effective date of January 1, 2023, and a term expiring on December 31, 2023 (the "2023 Blackhorse Space Permit"). (*Id.* ¶ 11).
- Blackhorse did not execute the 2023 Blackhorse Space Permit. (*Id.* at 4, ¶ 12).
- Blackhorse nevertheless continued to store its aircraft with Signature at FAT throughout 2023 and paid the rent specified in the 2023 Blackhorse Space Permit from July 2023 through March 2024. (*Id.* ¶ 13).

3

- On or about February 1, 2024, Signature sent Blackhorse a Notice of Expiration of Space Permit.  (*Id.* ¶ 14).

- Blackhorse vacated the space in March 2024.  (*Id.* ¶ 15).

- TBM first entered into a Space Permit with Signature in 2021 (the "2021 TBM Space Permit"), for the lease of 1750 square feet of hangar space in T-Hangar Z-6 for the storage of TBM's Compagnie Daher TBM-700 bearing tail number N160TM (the "TBM-700").  (*Id.* ¶ 16).

- The term of the 2021 TBM Space Permit began on October 25, 2021, and expired on October 31, 2022.  (*Id.* ¶ 17).

- The first page of the 2021 TBM Space Permit provided for Base Rent of $706 and an "Additional Monthly 'CAM Charge' 4%" of $28 per month.  (*Id.* ¶ 18).

- On October 27, 2022, TBM entered into a Space Permit agreement with Signature, effective date of November 1, 2022, for the lease of 1,470 square feet of space in the Community/Main Hangar (the "2022 TBM Space Permit").  (*Id.* at 5, ¶ 19).

- The term of the 2022 TBM Space Permit began on November 1, 2022, and expired on October 31, 2023.  (*Id.* ¶ 20).

- The first page of the 2022 TBM Space Permit provided for Base Rent of $748 and an "Additional Monthly 'CAM Charge' 5%" of $37 per month.  (*Id.* ¶ 21).

- On or about February 1, 2024, Signature sent TBM a Notice of Expiration of Space Permit.  (*Id.* ¶ 22).

- TBM vacated the space in March 2024.  (*Id.* ¶ 23).

- The 2020 Blackhorse Space Permit, unexecuted 2023 Blackhorse Space Permit, the 2021 TBM Space Permit, and the 2022 TBM Space Permit all contained the same CAM Charge Provision at Section 4(e) (the "CAM Charge Provision") which stated in full:

> "Common Area Maintenance. (CAM) Charge: Permittee shall pay to Signature monthly, as Additional Rent, the Permittee's proportionate share of expenses of every kind paid or incurred by Signature for the operation, upkeep, maintenance, repair or renewal of the Space and Common Use Areas. The CAM Charge shall include, but is not

limited to, maintenance and landscaping, fire suppression system maintenance and certification, security and access controls/phones, utilities, and property insurance. Notwithstanding the foregoing, the CAM Charge shall exclude the following: (1) Master Lease rent; (2) capital improvements; (3) mortgage payments; (4) depreciation; (5) leasing commissions, attorneys' fees, space planning costs; (6) any amounts paid to affiliates of Signature to the extent such amounts exceed amounts that would have reasonably been paid to unrelated third parties for similar services; (7) any of Signatures' overhead and general administration expenses; (8) advertising and promotional expenditures; (9) penalties, fees or interest incurred as a result of Signature's failure to make a payment when due. The CAM Charge shall be adjusted annually."

(*Id.* at 6, ¶ 24).

- The unexecuted 2023 Blackhorse Space Permit, the 2021 TBM Space Permit, and the 2022 TBM Space Permit (but not the 2020 Blackhorse Space Permit) also contained a footnote on the first page next to the phrase "Additional Monthly 'CAM Charge'" stating: "Charge is based on Permittee's proportionate share of actual reimbursable expenses from immediately preceding year and is subject to annual adjustment." (*Id.* ¶ 25).

- Signature charged and Blackhorse paid Base Rent and CAM Charges as follows:
  - January 2020 to December 2020 – Base Rent: $1,156 per month, CAM Charge: $46 per month;
  - January 2021 to December 2021 – Base Rent: $1,190.68 per month, CAM Charge: $47.38 per month;
  - January 2022 to June 2023 – Base Rent: $1,226.40 per month, CAM Charge: $48.80 per month;
  - June 2023 to March 2024 – Base Rent: $1,530 per month, CAM Charge: $77 per month.  (*Id.* ¶ 26).

- Signature charged and TBM paid Base Rent and CAM Charges as follows:
  - October 2021 to October 2022 – Base Rent: $706 per month, CAM Charge: $28 per month;
  - November 2022 to March 2024 - Base Rent: $748 per month, CAM Charge: $37 per month.  (*Id.* ¶ 27).

- Plaintiffs designated a single expert, Gregory M. Libby ("Libby"), to provide expert

testimony on their claims.  (*Id.* at 7, ¶ 28).

- Libby opined that the standard of care required Defendant to use a proportionate-share method to allocate CAM charges absent specific language to the contrary.  (*Id.* ¶ 29).

- Libby further opined that the proportionate-share calculation involves "calculating a percentage using the premises square footage as the numerator, and total square footage of the applicable building area as the denominator" (the "Percentage of Square Footage Method").  (*Id.* ¶ 30).

- Libby did not actually perform this square-footage-based calculation for any of the years of Plaintiffs' tenancies.  (*Id.* ¶ 31).

## II.    LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  An issue of material fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts" and must tender evidence of specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 & n.11 (1986). The Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in that party's favor, but a mere scintilla of evidence is insufficient. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Anderson*, 477 U.S. at 252. Failure of proof as to an essential element of the nonmoving party's case "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

## III.    ANALYSIS

### A.  Breach of Contract

Under California law, a breach of contract claim requires: (1) the existence of a contract,

(2) plaintiff's performance or excuse, (3) defendant's breach, and (4) resulting damages. *Pyramid Tech., Inc. v. Hartford Cas. Ins. Co.,* 752 F.3d 807, 818 (9th Cir.2014); *Aton Ctr., Inc. v. United Healthcare Ins. Co.*, 93 Cal. App. 5th 1214, 1230 (2023). "In a breach of contract action, a plaintiff must show damages to survive summary judgment." *Arredondo v. Univ. of La Verne*, 618 F. Supp. 3d 937, 948 (C.D. Cal. 2022) (citing *Coles v. Glaser*, 2 Cal. App. 5th 384, 391 (2016)). "Where a party claiming breach of contract 'offer[s] no proof of measurable damages,' it is proper to grant summary judgment against that party." *Unidisc Music, Inc. v. Shelby*, No. CV21704287SJOJEM, 2019 WL 4640394, at *6 (C.D. Cal. Aug. 8, 2019) (alteration in original) (quoting *Landmark Dev. Corp. v. Chambers Corp.*, 752 F.2d 369, 373 (9th Cir. 1985)). "Plaintiffs must do more than show the possibility of damages as a result of defendant's alleged breach . . . They must put forth evidence that they incurred damages themselves." *Woodrum v. Integris Health, Inc.*, No. CIV-05-1224-HE, 2007 WL 201045, at *2 (W.D. Okla. Jan. 24, 2007).

Plaintiffs contend that Defendant included prohibited expenses in CAM, argue that any calculation using those expenses necessarily results in overcharges, and assert that Defendant was contractually required to provide annual reconciliation statements. Those arguments, however, do not establish damages on this record. Defendant has produced undisputed testimony that the actual CAM charges billed to Plaintiffs were intentionally set below charges that would have resulted under Defendant's own favored calculation method. Given this evidence, to create a triable issue on damages, Plaintiffs were required to show, using their own interpretation of the CAM provision, that the amounts they actually paid exceeded what they should have paid.

Plaintiffs have not done so. Plaintiffs' argument that damages are inherent in a calculation approach that uses improper costs such as business expenses because such a calculation automatically results in an overcharge is unavailing. Defendant presented evidence through French's testimony that the actual CAM charges paid by Plaintiffs were purposefully calculated to be lower than they would have been had they been calculated under Defendant's interpretation of the CAM charges provision. (Doc. 41-7 at 92, 21:4-14).[2] To create a genuine issue of material

---

[2] Plaintiffs purport to dispute this in their responses to Defendant's Statement of Undisputed Facts. (Doc. 43-1 at 5). But none of the evidence Plaintiffs cite disputes French's testimony; rather, the evidence cited

fact as to damages, Plaintiffs must demonstrate under their interpretation of the CAM charges provision that they were overcharged for what they actually paid in CAM charges. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11; *Unidisc*, 2019 WL 4640394, at *6; *Woodrum*, 2007 WL 201045, at *2. Plaintiffs' expert did not perform the square-footage-based proportionate-share calculation for any year of Plaintiffs' tenancies, and his report opinions concern only required reconciliation, the theoretical method of allocation, and critiques of Defendant's approach. (*See* Doc. 24 at 13-15). When asked at deposition whether Plaintiffs were overcharged for any particular year, he answered that the "overcharge or undercharge would need to be determined" and explained that there was insufficient data to make that determination.[3] (Doc. 41-7 at 75, 15:15-16). Plaintiffs therefore offer no evidence from which a jury could quantify any overcharge under their own contractual theory, even approximately.

Plaintiffs' reconciliation argument fails for the same reason. Even assuming, without deciding, that the space permits required reconciliation statements, Plaintiffs have not introduced

---

simply stands for the proposition that there can theoretically be multiple ways to calculate CAM charges under the terms of the Space Permits. (*See, e.g.*, *id.* ("Mr. Libby and Mr. Hovannisian both testified that the 2023 CAM Calculation contained expenses which should not have been included as a CAM Charge.")).

[3] At oral argument, Plaintiffs asserted that Defendant failed to preserve or produce sufficient documents to permit necessary calculations. Defendant responded that Plaintiffs never requested such documents, failed to include any relevant discovery responses in the present motion, and raised this theory of discovery abuse for the first time at oral argument. The Court declines to consider Plaintiffs' discovery complaint, as Plaintiffs neither filed a motion to compel nor previously raised any discovery-related issues.

Plaintiffs also invoked *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251 (1946) at oral argument, to argue that damages may be awarded where a defendant's wrongful conduct prevents precise calculation. The Court also declines to consider this theory at this late stage. Plaintiffs did not raise *Bigelow* in their Opposition, and "[a]rguments made for the first time at oral argument are deemed waived." *United States v. Asefi*, No. 24-CR-00383-JST-1, 2026 WL 45087, at *3 (N.D. Cal. Jan. 7, 2026) (quoting *Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2020 WL 5517244, at *5 (N.D. Cal. Sept. 14, 2020)).

In any event, *Bigelow* is inapposite. There, the Supreme Court allowed damages based on reasonable inference where the record contained evidence of defendants' wrongful acts, their tendency to harm plaintiffs' business, and resulting declines in prices, profits, and value not attributable to other causes. 327 U.S. at 264. Here, Plaintiffs offer no evidence of wrongful conduct, causal injury, or damages. The more lenient standard recognized in *Bigelow* applies to the amount of damages, not to causation, which must still be reasonably established. *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1176 (3d Cir. 1993); *see also Computer Access Tech. Corp. v. Catalyst Enters., Inc.*, 273 F. Supp. 2d 1063, 1076 (N.D. Cal. 2003) (rejecting reliance on *Bigelow* where plaintiff "did not offer sufficient proof of any harm").

evidence from which a factfinder could infer that any reconciliation would have revealed an overcharge or any other compensable loss.  Simply put, Plaintiffs merely argue that each of the two sides have their own interpretation of the CAM charges provision without providing any evidence demonstrating that the difference in interpretation resulted in damages.  Without proof that they paid more than what was properly chargeable, Plaintiffs cannot show damages.[4]

The Court also notes that Plaintiffs prospectively agreed to fixed monthly CAM amounts in each permit term and then continued paying similar fixed amounts for years without objection. (*See* Doc. 41-3 at 6, ¶¶ 26-27).  On this record, the parties had a meeting of the minds as to the dollar amount of CAM charges during the relevant periods, regardless of any post hoc disagreement over the underlying cost categories.  Plaintiffs cannot avoid summary judgment by pointing to a theoretical interpretive dispute over Section 4(e) while offering no evidence that the agreed CAM amounts actually harmed them.

Because Plaintiffs have not produced evidence of measurable damages, an essential element of their breach of contract claims, Defendant is entitled to summary judgment on those

---

[4] The Court is not persuaded that the Space Permits require reconciliation statements. At oral argument, Plaintiffs conceded that the sole basis for this contention is the permits' annual adjustment language and acknowledged that the term "reconciliation" does not appear in the agreements. Plaintiffs' expert, Hovanissian, likewise admitted reconciliation is "not discussed" in the permits, relying instead on his view that it is "common practice in the industry." (Doc. 52 at 10 (citing Doc. 55 at 6, 81:1–4)).

The phrases "adjusted annually" and "annual adjustment" more naturally indicate that Defendant could change CAM charges once per year—not that it was required to perform or provide reconciliation statements. Parties remain free to contract on terms that differ from industry practice.  *See Ispot.TV, Inc. v. Teyfukova*, No. 2:21-CV-06815-MEMF-MAR, 2025 WL 2264484, at *11 (C.D. Cal. June 2, 2025).

To the extent Plaintiffs argue the language is ambiguous, they identify no evidence supporting that claim, much less any basis to equate "annual adjustment" with a reconciliation requirement. Their expert's opinion does not fill this gap.  Rather, he offers a conclusory interpretation that the permits "expressly require" reconciliation, unsupported by the text. (See Doc. 24 at 13).  Such conclusory expert opinions cannot create a genuine dispute of material fact. *See FullView, Inc. v. Polycom, Inc*., No. 18-CV-00510-EMC, 2022 WL 836302, at *3 (N.D. Cal. Mar. 21, 2022), *rev'd in part on other grounds*, No. 2023-1201, 2024 WL 1843686 (Fed. Cir. Apr. 29, 2024).

By contrast, Defendant identifies industry contracts that expressly require reconciliation using clear language. (*See* Doc. 41-1 at 21) (quoting *Sixth & Bryant, LLC v. Cort Furniture Rental Corp*., No. 20-CV-06444-JST, 2022 WL 4245463, at *1 (N.D. Cal. Aug. 17, 2022)).  Even assuming ambiguity, the record contains no evidence from which a reasonable factfinder could conclude that reconciliation statements were required.

claims.

**B.  Breach of Covenant of Good Faith and Fair Dealing**

Under California law, a breach of the implied covenant claim cannot stand in the absence of a breach of the underlying contract.  *Tran v. Kansas City Life Ins. Co.*, 228 F. Supp. 3d 1068, 1079 (C.D. Cal. 2017) (citing *San Diego Housing Comm'n v. Indus. Indem. Co.*, 68 Cal.App.4th 526, 544 (1998)).  Because Plaintiffs' contract claims fail for lack of proof of damages, their derivative implied covenant claims also fail.  No contrary authority suggests that an implied covenant claim survives summary judgment where the contract claim fails on damages.  Summary judgment on the third and fourth causes of action is therefore appropriate.

**C.  Unfair Business Practices (Bus. & Prof. Code §17200 et seq.)  Claim**

To have standing under California Business and Professions Code §17200, a private plaintiff must show an injury in fact.  Defendant argues that Plaintiffs lack standing because they cannot show that they were overcharged for CAM charges, and Plaintiffs respond by incorporating their damages arguments from the contract claims.  Because Plaintiffs have not produced evidence that they were overcharged under their own contractual theory, they have not shown an "injury in fact," and their §17200 claim fails.

Moreover, Plaintiffs' §17200 claim is predicated on the same conduct as their contract claims.  Where a § 17200 claim is based on underlying claims that fail, the derivative unfair claim must also be dismissed.  *Bernardo v. Carl's Jr. Restaurants LLC*, No. 2:25-CV-00826-CAS-PVCX, 2025 WL 1755136, at *13 (C.D. Cal. June 23, 2025) (citing William L. Stem, Business and Professions Code § 17200 Practice, 3:56 (Rutter Group 2019 ed.); *Ingels v. Westwood One Broadcasting Services, Inc.*, 129 Cal. 4th 1050, 1060 (2005)); *see Keen v. Am. Home Mortg. Servicing, Inc.*, 664 F. Supp. 2d 1086, 1102 (E.D. Cal. 2009).

Plaintiffs alleged in the SAC an alternative theory based on an allegedly similarly situated aircraft owner paying "far less" in CAM charges, but they did not argue that theory in opposition to the summary judgment motion, and it is therefore waived.  *Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016); *Hecker v. Micron Tech., Inc.*, 32 F. Supp. 2d 1193, 1196 (D. Idaho 1997), *aff'd*, 1998 WL 792295 (9th Cir. Nov. 13, 1998).

10

Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiffs' Unfair Business Practices (Bus. & Prof. Code §17200 et seq.) claim.

## IV.    MOTION IN LIMINE

Because the Court's summary judgment ruling does not turn on exclusion of Plaintiffs' expert, the Motion in Limine to exclude his testimony is denied as moot.  The Court assumes for purposes of this order that Plaintiffs' expert opinions are admissible but nonetheless finds that Plaintiffs still fail to raise a triable issue as to damages.

## V.    CONCLUSION

For the reasons set forth above, the Court finds there is no genuine dispute of material fact that Plaintiffs did not suffer damages on any of their claims.

Accordingly, it is ORDERED:

1.   Defendant's Motion in Limine (Doc. 26) is DENIED as MOOT.

2.   Defendant's Motion for Summary Judgment (Doc. 41) is GRANTED.

3.   The Clerk of Court shall enter judgment in Defendant's favor and close this case.

Dated:    May 5, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

11