UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TBM N160TM, LLC, a California limited liability company; and BLACKHORSE CLOVIS, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>SIGNATURE FLIGHT SUPPORT LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. 1:24-cv-00963-HBK<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION FOR ATTORNEY'S FEES[1]<br><br>(Doc. 65) |

Before the Court is Defendant Signature Flight Support LLC's Motion for Attorney's Fees. (Doc. 65, "Motion"). Defendant supports the motion with the declarations of Garth W. Aubert, Stephen B. Sands, and Daniel Barnes, along with a summary of billed hours. (Docs. 65-2, 65-3, 65-4, Ex. A). For the reasons below, the Court motion is GRANTED IN PART.

## I. BACKGROUND

This action arises from Plaintiff's breach-of-contract claim against Defendant Signature Flight Support LLC concerning common area maintenance ("CAM") charges under Space Permits for aircraft storage at Fresno Yosemite International Airport ("FAT"). (Doc. 9).

---

[1] The parties consented to magistrate judge jurisdiction under 28 U.S.C. §636(c)(1). (Doc. 18).

On December 11, 2025, Defendant moved for summary judgment and moved in limine to exclude Plaintiff's expert testimony. (Docs. 25, 26). On January 21, 2026, the Court denied the summary judgment motion without prejudice because Defendant had not complied with the Court's pre-filing requirements, including the meet and confer requirement and submission of a joint statement of undisputed facts. (Doc. 40). Defendant re-filed its summary judgment motion on February 12, 2026. (Doc. 41). Plaintiffs opposed the motion on February 24, 2026, and Defendant replied on March 6, 2026. (Docs. 43, 52-56).

On May 6, 2026, the Court granted Defendant's motion for summary judgment, concluding that Plaintiffs had not raised a genuine dispute of material fact as to damages on any claim. (Doc. 63). The Court denied the motion in limine as moot because its summary judgment ruling did not depend on exclusion of Plaintiff's expert. (*Id.*). Judgment was entered for Defendant, and the case was closed. (Doc. 64).

Defendant timely moved to attorney's fees on May 20, 2026. See Local Rule 293. (Doc. 65). On June 3, 2026, Plaintiffs filed their opposition. (Doc. 68). On June 12, 2026, Defendant filed a reply. (Doc. 69).

## II. APPLICABLE LAW

"A federal court sitting in diversity applies the law of the forum state regarding an award of attorney's fees." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000). Under California law, parties may contract for recovery of attorney's fees. Cal. Civ. Proc. Code § 1021; *Gil v. Mansano*, 121 Cal. App. 4th 739, 742-43 (2004).

California Civil Code § 1717 permits an award of reasonable attorney's fees and costs "in any action on a contract" if the contract provides for such an award to the prevailing party. Cal. Civ. Code § 1717(a). A party seeking contractual attorney's fees must establish that (1) the contract authorizes the fees, (2) they prevailed on the contract claim, and (3) the requested attorney's fees are reasonable. *First Nat. Ins. Co. of Am. v. MBA Const.*, 2005 WL 3406336, at *2 (E.D. Cal. Dec. 12, 2005).

The lodestar, the product of reasonable attorney hours and a reasonable hourly rate, is the starting point. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *PLCM Grp. v. Drexler*, 22

Cal. 4th 1084, 1095 (2000), *as modified* (June 2, 2000) ("the fee setting inquiry in California ordinarily begins with the 'lodestar'"). The Court has broad discretion in setting the award, but it must provide a clear and concise explanation for its decision. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992); *Hensley*, 461 U.S. at 437.

III. ANALYSIS

The Space Permits provide that, "[i]f either Party institutes an action to enforce its rights under this Permit, the prevailing Party shall be reimbursed by the other Party for its reasonable attorney's fees in addition to any other recoverable damages." (Doc. 71, Exhibit B, § 29(c)). Plaintiffs do not dispute that Defendant prevailed. (*See generally* Doc. 68). Because the Court granted summary judgment for Defendant and entered judgment in its favor, Defendant is entitled to reasonable attorney's fees. (Docs. 63, 64).

Defendant seeks $291,460.00 in attorney's fees, plus an upward adjustment to the lodestar. (Doc. 65 at 4-11). It seeks compensation from 469.5 hours of attorney time: 93.3 bours by Garth W. Aubert at $900 per hour ($83,970); 370.4 by Stephen B. Sands at $550 per hour ($203,720); and 5.8 hours by Daniel Barnes at $650 per hour ($3,770). (Doc. 65-1 at 10). Plaintiffs challenge both the requested rates and hours as excessive, duplicative, and disproportionate to the litigation. (Doc. 68 at 5-15).

A. Hourly Rates

A reasonable hourly rate is the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). For lodestar purposes, the relevant community is generally the forum in which the district court sits. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). The fee applicant bears the burden of producing "satisfactory evidence – in addition to the attorney's own affidavits" that the requested rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11.

The relevant community is the Fresno Division of the Eastern District of California. Recent decisions reflect hourly rates ranging from $200 to $750, with rates above $600 reserved for attorneys with more than 30 years of experience. *Meeks v. FCA US LLC*, 2024 WL 4437098,

at *7 (E.D. Cal. Oct. 7, 2024) (awarding $525 for attorneys with more than 20 years or experience, $450 for attorneys with 13-14 years, $300 for attorneys with 5-8 years); *Pompeian, Inc. v. Mill at Kings River, LLC*, 2026 WL 114251, at *3 (E.D. Cal. Jan. 15, 2026); *see also Beard v. Cty. of Stanislaus*, No. 1:21-cv-00841-ADA-SAB, 2023 WL 199200, at *13 (E.D. Cal. Jan. 17, 2023) (collecting cases) (surveying a variety of cases and noting awards for attorneys with more than 20 years of experience are awarded hourly rates between $325 to $400, attorneys with 10-20 years are awarded between $250 to $350 per hour, attorneys with five to 10 years of experience are awarded between $225 to $300 per hour, and less attorney with less than five year are awarded $200 per hour.).

Defendant seeks compensation at the following rates for attorney time:

- Garth W. Aubert: $900 per hour. Aubert, a Manning Gross + Massenburg LLP partner, has practiced since 1992. (Doc. 65-3, ¶ 1). He has more than 33 years of aviation and commercial litigation experience, has represented clients throughout the United States and before the National Transportation and Safety Board, written and spoken extensively on aviation topics, and has been recognized as a leading aviation attorney in California. (*Id*. at ¶ 2-3).
- Stephen B. Sands: $550 per hour. Sands, a Manning Gross + Massenburg LLP associate, was admitted in 2022 and joined the firm in June 2024. His practice includes aviation litigation, business litigation, general liability, product liability, and construction defect matters. (Doc. 65-2, ¶ 2-4). Defendant also requests an enhanced rate based on the asserted difficulty and significance of his work. (Doc. 65-1 at 7).
- Daniel Barnes: $650 per hour. Barnes, a Manning Gross + Massenburg LLP associate, was admitted in 2009 and has approximately 12 years of litigation experience, with period inactive status. (65-4, ¶ 1-3).
- Defendant does not seek fees for paralegal work. (Doc. 65-1 at 7).

In further support of the requested rates, Defendant relies on Eastern District of California contract cases approving hourly rates of $595 to $700 for partners, $500 for a seventh- and ninth-

year associates, and $375 for a second-year associate. (Doc. 65-1 at 5 (citing *Am. Multi-Cinema, Inc. v. Manteca Lifestyle Ctr*., LLC, 2024 WL 1312209, at *4 (E.D. Cal. Mar. 25, 2024) (reducing hourly rates to $700 for partners, $500 for seventh and ninth year associates, and $375 per hour for second-year associates); *AGK Sierra De Montserrat, L.P. v. Comerica Bank*, 2025 WL 857346, at *15 (approving hourly rates of $595 to $700 for partners, $555 to $665 for senior level associates with 20+ years of experience, and $435 to $480 for an associate with four years of experience).

The requested rates exceed those ordinarily awarded in this District and those approved in Defendant's cited cases. Moreover, those cases involved materially more extensive litigation. See, e.g., *Am. Multi-Cinema, Inc*., 2024 WL 1312209, at *4 (seven-year contract action involving substantial evidence, extensive briefing, complex legal issues, and a three-day bench trial); *AGK Sierra De Montserrat, L.P. v. Comerica Bank*, 2025 WL 857346, at *1 (judgment entered after six-day bench trial). Defendant neither identifies Eastern District authority supporting its proposed rates nor argues that out-of-forum rates should apply. *Cf. Gates*, 987 F.2d at 1405 (permitting use of out-of-forum rates only where local counsel is unavailable because of a lack of necessary experience, expertise, or specialization).

Defendant's reliance on purportedly specialized aviation-related commercial litigation does not warrant higher rates. This action concerns a commercial contract dispute concerning CAM charges, and Defendant offers no evidence that litigation of this matter required any technically complex aviation litigation experience. (Doc. 65-1 at 5).

The Court may apply current rates to account for inflation when use of historical rates would render the award unreasonable. *Espinoza v. Guardian Ind., LLC*, 2025 WL 3201561, at *2 (E.D. Cal. Nov. 17, 2025) (citations omitted). Considering prevailing Fresno Division rates, counsel's experience, and inflation, the Court finds the following rates reasonable:

| **Attorney** | **Reasonably Hourly Rate Hours** |
| --- | --- |
| Garth W. Aubert | $650 |

| | |
|---|---|
| Stephen B. Sands | $350 |
| Daniel Barnes | $475 |

Aubert's rate reflect his partnership status and more than 30 years of practice and substantial litigation experience. Sand's rate reflects he was admitted to practice in 2022 and joined the firm shortly before this action commenced. Barnes's rate reflects his 12 years of litigation experience, with periods of inactive status.

B. Number of Hours Expended

Courts generally defer to counsel's professional judgment regarding the time reasonably necessary to litigate a case. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2007). The Court may nevertheless reduce hours that are excessive, redundant, or otherwise unnecessary. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009); *Hensley*, 461 U.S. at 433-34 (the court may reduce the number of hours "where documentation of the hours in inadequate; if the case was overstaffed and hours were duplicated; [or] if the hours expended are deemed excessive or otherwise unnecessary."). "In determining reasonable hours, counsel bears the burden of submitted detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). The burden then shifts to the opposing party to challenge the reasonableness of the hours requested. *Ruff v. County of Kings*, 700 F. Supp. 2d 1225, 1228 (E.D. Cal. 2010). Even absent a specific objection, the Court must independently assess the reasonableness of the requested hours. *Parkridge Ltd. v. Indzyen, Inc*., 2020 WL 9422351, at *4 (N.D. Cal. May 8, 2020); *see also Scalia v. County of Kern*, 2023 WL 3124385, at *1 (E.D. Cal. Apr. 27, 2023).

According to the declarations, Aubert expended 93.3 hours, Sands expended 370.4 hours, and Barnes expended 5.8 hours, for a total of 469.5 attorney hours. (Doc. 65-2). Plaintiffs contend that (1) the claimed hours are excessive, duplicative, and disproportionate to the litigation; (2) Defendant should not recover fees resulting from its own procedural noncompliance; and (3) the summary billing records supports a further reduction. (Doc. 68 at 8-12).

1. Procedural Noncompliance

On January 21, 2026, the Court denied Defendant's first summary judgment motion without prejudice because Defendant had not complied with the Court's mandatory pre-filing meet and confer requirement and failed to complete a joint statement of undisputed facts. (Doc. 40). Defendant filed a renewed summary judgment motion on February 12, 2026. (Doc. 41).

Plaintiffs contend Defendant should not recover fees for work made necessary by its failure to follow the Court's Case Management and Scheduling Order ("CMSO"). (Doc. 68 at 10-11; Doc. 31 at 2-3, "CSMO"). Defendant responds that it excluded time for the subsequent meet and confer and the joint statement of undisputed facts. It nevertheless seeks compensation for post-January 20, 2026 work related to the renewed motion, including revised briefing, responses to Plaintiff's additional facts, and oral argument preparation. (Doc. 65-1 at 9, n.3; Doc. 69 at 9).

The Court will not reduce time reasonably spent preparing for oral argument. But Defendant may not recover for work revising or strengthening a renewed summary judgment motion where that work resulted from its failure to comply with the CSMO. *See, e.g., Love v. Kim*, 2019 WL 8167926, at *6 n.5 (C.D. Cal. Oct. 18, 2019) ("It seems somewhat ironic that … counsel would seek to be compensated for time incurred because of the attorney's own failure to comply with a court order."). The Court therefore will deduct 16.2 hours from Sands' time for work performed between February 6 and February 12, 2026, in drafting the renewed motion. (*See* Doc. 65-2 at 20-21).

2. Excessive, Duplicative, and Disproportionate Billing

Defendant characterizes this case as involving "novel and complex" issues requiring counsel "experienced in both sophisticated financial transactions and aviation litigation." (Doc. 65-1 at 8). It argues the Space Permits at issue differed markedly from standard leases because aircraft had to be towed through shared facility areas, and hangar space was used by both short- and long-term tenants, and the amount in controversy was substantial. (*Id.*). Plaintiffs contend Defendant overstates the complexity of the case by attempting to re-characterize a case concerning CAM charges under a commercial lease as complex aviation litigation in part to

justify the number of hours requested. (Doc. 68 at 7). The record does not support treating the CAM-allocation dispute as unusually complex.

Defendant has not shown that the cited operational features materially increased the legal or factual complexity of the case. Rather, as observed by Plaintiffs, the action required analysis of the governing Space Permits, the CAM charges assessed, and Plaintiffs' claimed damages, conventional issues presented in commercial lease and cost-allocation disputes. (Doc. 68 at 8); *see, e.g., Portus Pty. Ltd. v. Zmodo Tech. Corp. Ltd.*, 2021 WL 6197752, at *3 (C.D. Cal. Apr. 12, 2021) (finding hours billed was not aligned with the complexity of the case, and noting that while intellectual property is a specialized area of law, "the skills of the attorneys and their attendant hourly rates are likely incongruent with a simple breach of contract case."). The Court therefore assesses the requested hours in light of the case's actual nature, a commercial contract claim arising from a CAM allocation dispute under the term of Space Permits, ultimately dismissed on summary judgment because Plaintiffs did not establish damages.

Plaintiffs argue 469.5 hours is disproportionate to the work performed, which consisted principally of written discovery, three depositions, a motion in limine to exclude Plaintiff's expert, and summary judgment briefing.[2] (Doc. 68 at 8-9). Defendant cites additional work, including removal, court conferences, meet and confer efforts, expert discovery, and motions to seal. (Doc. 69 at 8-9). Defendant also contends the case was "factually and analytically demanding" as it involved two plaintiffs and three Space Permits and required detailed analysis of financial and accounting data to determine expenses that were CAM-eligible, calculations of total rental footage, and analysis of the "precise language of the Space Permits to determine the precise language to determine the precise contours of Signature's rights and obligations as applied to the factual circumstances of the case." (*Id.*).

---

[2] Plaintiffs also note that their firm billed 144.4 hours and argue the disparity supports a reduction. (Doc. 68 at 8-9). Although "opposing counsel's billing records may be relevant to determining whether the prevailing party spent a reasonable number of hours on the case, those records are not dispositive." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202-03 (9th Cir. 2013); *see also Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001) (comparison of hours spent on particular tasks by the attorney seeking fees and by the attorney for the opposing party "does not necessarily indicate whether the hours expended by the party seeking fees were excessive.").

As discussed *supra*, the Court rejects Defendant's argument that the case presented novel and complex issues in a unique aviation context requiring specialized skills and attention. Nor do the billing records substantiate a substantial volume of work devoted to those assertedly complex issues. The Court identified only 3.5 hours billed by Sands and 1.8 hours billed by Aubert for review, research, analysis, or strategy concerning CAM charges, the Space Permits, or facility square footage. (*See* Doc. 65-2). Nor do the additional tasks Defendant identifies justify the requested hours.

Defendant describes the written discovery as "considerable," citing its responses to 15 requests for production and 31 interrogatories, serving 35 requests for production and 21 interrogatories on Plaintiff Blackhorse Clovis, LLC, serving 19 interrogatories and 35 requests for production on Plaintiff TBM N160TM, LLC, and conducting three depositions. (Doc. 65-2 at ¶ 9; 65-3 at ¶ 7). Plaintiffs' evidence, however, indicates that Defendant's discovery responses were largely boilerplate and produced no additional documents; that the discovery served on the two Plaintiffs was largely duplicative; and that the three depositions took well under 8 hours. (Doc. 68-1, at ¶¶ 8-15, Exs. B, C, D, E, F).

Moreover, Sands also billed 160 of his 370.4 hours researching, drafting, and briefing the summary-judgment and *Daubert* motions. (See Doc. 65-2.) The summary judgment memorandum was not particularly complicated, with several short declarations and exhibits attached. The dispositive damages argument occupied six pages of the 23-page memorandum. (Doc. 41-1). The reply memorandum was 10 pages, with related responses to Plaintiffs' statement of undisputed facts in support of their response to the motion for summary judgment. (Docs. 52-56). The Court denied the *Daubert* motion as moot and did not rely on exclusion of Plaintiffs' expert in granting summary judgment. (Doc. 63 at 11). Thus, while not raised specifically by Plaintiffs, the time devoted to the *Daubert* motion provides an additional basis for reduction.

The billing records also contain entries by Aubert and Sands that appear to concern the same tasks, including review of the Space Permits and other documents, initial strategy and defense plan on June 12, 2024 through June 14, 2024; review of correspondence from Plaintiff's

counsel regarding discovery on October 14, 2024; drafting protective order on October 18, 2024; corresponding with Plaintiffs' counsel regarding protective order and editing the protective order on October 25, 2024; review of initial disclosures on December 5, 2024; strategy regarding discovery responses and correspondence with Plaintiffs' counsel on January 9, 2025; drafting responses to discovery on January 29, 2025; corresponding with Plaintiffs' counsel on February 25, 2025; drafting written discovery on April 28, 2025 and June 27, 2025; working on expert disclosure in October 2025; and outlining draft of oral argument for motion for summary judgment on January 12, 2026. (Doc. 65-2). Barnes and Sands also billed time researching Eastern District fee decisions and lodestar calculation in May 2026. (*Id.*). The summary records do not permit the Court to determine whether these entries reflect distinct assignments or duplicative work.

Defendant prevailed on summary judgement, and counsel's successful representation warrants compensation for reasonable work performed. (Docs. 63, 64). But the claimed hours are excessive in relation to the scope and complexity of the litigation, and the summary billing records do not permit the Court to reliably distinguish complementary work from duplicative work. After first deducting the 16.2 hours attributable to Defendant's procedural noncompliance, the Court applies a 25% across-the-board reduction to the remaining hours claimed by each attorney. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001) ("We have… approved a percentage or across-the-board approach in cases where much smaller fee awards were at stake, but only when the district court provides a reasonable explanation for the cut.") (collecting cases); *Scalia*, 2023 WL 3124385, at *3 (reducing hours by 50% due to excessive and unnecessary billing, inadequate detail in billing, and the absence of evidence that the motion contained novel or difficult questions) (collecting cases).

C. Lodestar Calculation

With the time and hourly adjustments as set forth above, the final lodestar calculation is as follows:

| Attorney | Hours | Rate | Lodestar |
|---|---|---|---|
| Garth W. Aubert | 70 | $650 | $45,500.00 |
| Stephen B. Sands | 265.7 | $350 | $92,995.00 |
| Daniel Barnes | 4.4 | $475 | $2,090.00 |
| TOTAL | | | $140,585.00 |

D. Lodestar Adjustment

"[I]n rare cases, a district court may make upward or downward adjustments to the presumptively reasonable lodestar." *Gates*, 987 F.2d at 1409. Adjustments to a lodestar figure is based on a number of factors, including: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001).

Defendant argues the *Ketchum* factors weigh in favor of an upward adjustment because the claims were complex and demanded specialized aviation knowledge and counsel familiar with hangar and airport operations. (Doc. 65-1 at 10). Plaintiffs argue that the request for upward adjustment should be denied because the case did not involve novel or unusually challenging issues, counsel was not precluded from other work, and the claimed complexity, skill, and result are already reflected in the lodestar. (Doc. 68 at 12-13).

The Court declines to adjust the lodestar. The fee award was not contingent, and Defendant has not shown that this representation precluded counsel from accepting other work. Nor does the record establish that the case involved novel or unusually difficult issues or required extraordinary skill beyond that reflected in the lodestar calculation.

Accordingly, it is ORDERED:

1. Defendant's motion for attorney's fees (Doc. 65) is GRANTED IN PART.
2. Defendant is awarded attorney's fees in the amount of $140,585.00.
3. Within thirty (30) days after entry of this Order, Plaintiffs shall pay Defendant

$140,585.00 through Defendant's counsel of record by wire transfer, cashier's check, or another method agreed upon by the parties.

4. Within seven (7) days after receiving payment in full, Defendant shall file a notice of satisfaction. The notice shall not disclose confidential financial information.

5. If the parties agree to a different payment schedule or method of payment, they may implement that agreement without further order of the Court, provided that Defendant timely files a notice of full satisfaction after payment is completed.

Dated: September 17, 2026

Helena M. Barch-Kuchta

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE